United States District
Court of The Southern
District of Florida

FILED by ___ D.C.

SEP 1 4 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

Daniel A. Rodriguez,
_Petitioner_

V.

Case No. 1:15-CV-22901-JEM

United States of America
_Respondent_

## Motion to Clarify Magistrates Misinterpretation of 9-2-2015 Denial of Supplement: IN RE Rivero.

Comes, now Prose litigant Daniel Angel Rodriguez, Totally flustered by the Honorable Magistrate, Mr. Patrick A. White interpretation of Bond supplement, In 9-2-2015 Denial order. Petitioner is hopeless to wonder if filing was intact when Presented to this court.

The denial Order states: " The Eleventh Circuit has recently determined that the Supreme Court's decision in Johnson is NOT retroactively applicable to cases on Collateral review. SEE In re Rivero, No 15-13089 (11th Cir. 8-12-15. "

1 of 5    (Exh. Attached)

I'd like to bring this Courts attention back to the Bond Reconsideration Amendment, or Supplement as referred to by this Court., The 11th Circuit ruling In Rivero was the very essence and reason for said Supplement...

Petitioner would respectfully state that the decision in, In re Rivero By the 11th Circuit; The Justices were to decide whether the application for leave to file a second or successive 2255 motion should be granted, In light of Johnson v. U.S, 576. US ___ 192 L.Ed.2d 569. And also whether the Johnson decision established "a new rule of Constitutional-law", "made retroactively" to cases on collateral review by the Supreme Court under 28 USC 2255 (h) (2).,

At first glance it would appear that the 11th Circuit had doomed any hope's of retroactive effect from the Johnson decision holding " Because we hold that

2 of 5

<u>Johnson</u> did not establish a new rule of constitutional law' made retroactive to cases on collateral review by the Supreme Court (page 1-2 slip Opinion)" <u>HOWEVER</u> A closer look at the courts opinion <u>In Rivero</u> (Supra) will point out a clear distinction between retroactivity for the purpose of 2255 <u>(h)(2)</u> Second and Successive motion under 2244(b)(3)(C)., And retroactivity for purpose of 28 USC <u>2255 (F)(3)</u>; The distinction is for the purpose of Second and/or Successive 2255 motion The U.S Supreme Court <u>must</u> unequivocally <u>announce</u> It's opinion is retroactive SEE <u>IN Re MOSS</u>. 703 F3d.1301-1303 (11ᵗʰ Cir. 2013) and <u>IN Re Anderson</u> 396 F3d. 1336, 1339 (11ᵗʰ Cir. 2005). <u>Yet</u>' for purpose's of an <u>initial</u> 2255 under <u>(F)(3)</u> all that is required is that the decision announced A Substantive, rather than Procedural rule that narrowed the scope of section 924(e) by interpreting its terms. SEE <u>Rivero</u> (page 4 slip Opinion)

Quoting <u>Bryant V. Warden FCC Coleman-Medium</u> 738 F.3d. 1253-1278 (11th Cir. 2013) Note: <u>2255 (F)(3)</u>-"<u>IS an initial 2255/First Collateral Review</u>".

 <u>In Rivero</u> The 11th Circuit made it clear that the <u>Johnson</u> decision did indeed announce a New Substantive Rule of constitutional law... Because the New Johnson rule narrowed the scope of 924(e) id (Page 4 slip Opinion). <u>In Rivero</u> (In Verbatim) the Court wrote ✳ "If Rivero — like the Petitioner in Bousley — were seeking a first collateral review of his Sentence, the New Substantive rule from Johnson would apply retroactively." "But Rivero has applied for leave to File a Second or Successive"...

SEE: Page 10, Slip Opinion; <u>Rivero</u> Opinion attached as <u>Exhibit</u> herein.

 Here ProSe Petitioner is clearly seeking Collateral review of his Sentence under his (initial 2255, under <u>(F)(3)</u>) SEE:

Petitioners arguement in filed 2255 (F)(3) Page 5 of 12. AND pages 6-7 of 8 of filed Motion to Clarify/amend Petitioners Pending § 2255 motion, and Bond application. Which points out why his filed 2255 (now pending) is his initial 2255 under (F)(3) and NOT a second or successive 2255 under (h)(2). Thus, if anything the Rivero decision supports Petitioners claims, aswell that he is more likely to succeed on the merits of his claim.

Based on the underlined aforementioned Pro Se Petitioner respectfully asks this court to include this filing as an addendum to Pending 2255(F)(3), and to revisit denied Supplement.

Respectfully Submitted

Date: 9-10-15 _____

Pro Se Petitioner, Daniel A. Rodriguez

5 of 5

# Exhibit

SEE. (Marked) Page
10 and 11. of Opinion:
Or Pages 5 and 6 of Exhibit.

Exh. 1 of 16

TWO-SIDED

In re: GILBERTO RIVERO, Petitioner.
No. 15-13089-C
UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
August 12, 2015

[PUBLISH]

Application for Leave to File a Second or Successive Motion to Vacate, Set Aside, or Correct Sentence, 28 U.S.C. § 2255(h)

Before TJOFLAT, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

This application for leave to file a second or successive motion to vacate, set aside, or correct a federal sentence requires us to decide whether the decision of the Supreme Court in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), established "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2255(h)(2). Gilberto Rivero was sentenced as a career offender under what were mandatory United States Sentencing Guidelines, and his judgment of conviction and sentence was upheld on direct appeal and collateral review, *id.* § 2255. Rivero now applies for leave to file a second or successive motion under section 2255. Because we hold that *Johnson*

Page 2

did not establish a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, we deny Rivero's application.

Rivero filed an application seeking an order permitting the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, *id.* §§ 2255(h), 2244(b)(3)(A). His application may be granted only if this Court certifies that the second or successive motion involves one of the following "two narrow circumstances," *Gilbert v. United States*, 640 F.3d 1293, 1305 (11th Cir. 2011) (en banc):

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C).

A "new rule of constitutional law," *id.* § 2255(h)(2), applies retroactively to criminal cases that became final before the rule was announced only if that rule falls within one of two narrow exceptions. *See Teague v. Lane*, 489 U.S. 288, 308, 109 S. Ct. 1060, 1074 (1989) (plurality opinion). The first exception requires the

Page 3

retroactive application of "[n]ew substantive rules." *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S. Ct. 2519, 2522 (2004) (emphasis omitted). And the second exception requires the retroactive application of "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 351, 124 S. Ct. at 2523 (internal quotation marks and citation omitted). The first exception limits the application of new substantive constitutional rules on collateral review of criminal convictions to those rules that "necessarily carry a significant risk that a defendant stands

convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him," *id.* at 352, 124 S. Ct. at 2522-23 (internal quotation marks and citation omitted); *see also Teague*, 489 U.S. at 311, 109 S. Ct. at 1075 (plurality opinion) (internal quotation marks and citation omitted) (explaining that a new substantive rule applies retroactively if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"), and the second exception limits the application of new procedural constitutional rules on collateral review of criminal convictions to those rules "without which the likelihood of an accurate conviction is seriously diminished," *Teague*, 489 U.S. at 313, 109 S. Ct. at 1077.

Rivero seeks permission to raise one claim in a second or successive motion under section 2255. Rivero asserts that he was sentenced as a career offender under

Page 4

mandatory Sentencing Guidelines because his prior conviction for attempted burglary was a "crime of violence" under the residual clause of section 4B1.2(a)(2) of the Sentencing Guidelines. U.S.S.G. § 4B1.2(a)(2) (Nov. 2003). Rivero argues that we should grant him leave to file a second or successive motion to vacate, set aside, or correct his sentence because *Johnson* created a new rule of constitutional law that falls within the exception that permits the retroactive application of new substantive rules. Although we agree that *Johnson* announced a new substantive rule of constitutional law, we reject the notion that the Supreme Court has held that the new rule should be applied retroactively on collateral review.

"The new rule announced in [*Johnson*] is substantive rather than procedural because it narrow[ed] the scope of [section] 924(e) by interpreting its terms, specifically, the term violent felony." *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1278 (11th Cir. 2013) (internal quotation marks and citation

omitted) (second alteration in original). In *Johnson*, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. That is, *Johnson* "narrowed the class of people who are eligible for" an increased sentence under the Armed Career Criminal Act. *Bryant*, 738 F.3d at 1278 (emphasis omitted).

Even if we assume that the new substantive rule announced in *Johnson* also

Page 5

applies to the residual clause of section 4B1.2(a)(2) of the Sentencing Guidelines, that rule must also be "made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2255(h)(2), for Rivero to obtain our permission to file a second or successive motion. Under section 2255(h)(2), "the Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive." *Tyler v. Cain*, 533 U.S. 656, 663, 121 S. Ct. 2478, 2482 (2001) (second alteration in original) (quoting 28 U.S.C. § 2255(h)(2)). "When the Supreme Court makes a rule retroactive for collateral-review purposes, it does so unequivocally, in the form of a holding." *In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005). That is, "the Court does not make a rule retroactive through *dictum* or through multiple holdings, unless those holdings necessarily dictate retroactivity of the new rule." *Id.* (internal quotation marks and citation omitted); *see also In re Henry*, 757 F.3d 1151, 1160 (11th Cir. 2014) (internal quotation marks and citation omitted) (explaining that "the Supreme Court could make a new rule retroactive to cases on collateral review through multiple holdings that logically dictate the retroactivity of the new rule").

No combination of holdings of the Supreme Court "necessarily dictate" that *Johnson* should be applied retroactively on collateral review. The Supreme Court decided *Johnson* on direct review, 135 S. Ct. at 2556, the decision did not "express[ly] hold[]" that it applies retroactively, *In re Moss*, 703 F.3d 1301, 1303 (11th Cir.

2013), and "the Supreme Court has not since applied [*Johnson*] to a case

Page 6

on collateral review," *In re Anderson*, 396 F.3d at 1339. Moreover, the rule announced in *Johnson* does not meet the criteria the Supreme Court uses to determine whether the retroactivity exception for new substantive rules applies. *Johnson* held that the residual clause of the Armed Career Criminal Act *does not* impose a punishment for a prior conviction for possession of a short-barreled shotgun because that clause is unconstitutionally vague, 135 S. Ct. at 2558, but *Johnson* did not hold that Congress *could not* impose a punishment for that same prior conviction in a statute with less vague language. Indeed, the day after the Supreme Court decided *Johnson*, Congress could have amended the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), to provide a greater sentence for a defendant with a prior conviction for possession of a short-barreled shotgun or, as here, a prior conviction for attempted burglary. Nothing in *Johnson* suggests that "certain kinds of primary, private individual conduct [are] beyond the power of [Congress] to proscribe," *Teague*, 489 U.S. at 311, 109 S. Ct. at 1075 (plurality opinion) (internal quotation marks and citation omitted).

There are two types of "new [substantive] rule[s] of constitutional law," 28 U.S.C. § 2255(h)(2), that the Supreme Court has "necessarily dictate[d]," *In re Anderson*, 396 F.3d at 1339 (internal quotation marks and citation omitted), are to be applied "retroactive[ly] on collateral review," 28 U.S.C. § 2255(h)(2), and the new rule announced in *Johnson* fits neither of those types. First, we apply

Page 7

retroactively on collateral review a new rule that prohibits the punishment of certain primary conduct. Examples of this type of new rule include *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472 (2003), in which the Supreme Court

held that the Fourteenth Amendment forbids states from making illegal private, homosexual sodomy between consenting adults, *id.* at 578, 123 S. Ct. at 2484, and *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533 (1989), in which the Supreme Court held that the First Amendment forbids states from punishing an individual for burning the American flag in protest, *id.* at 414, 109 S. Ct. at 2545. Those rules operate retroactively on collateral review because they "place particular conduct or persons covered by [a] statute beyond the State's power to punish." *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2522. Second, we apply retroactively on collateral review a new rule that prohibits a category of punishment for certain offenders or offenses. Examples of this type of new rule include *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002), in which the Supreme Court held that the Eighth Amendment forbids states from "tak[ing] the life of a mentally retarded offender," *id.* at 321, 122 S. Ct. at 2252 (internal quotation marks and citation omitted), and *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641 (2008), in which the Supreme Court held that the Eighth Amendment forbids states from executing a child rapist unless his crime "t[ook] the life of the victim," *id.* at 447, 128 S. Ct. at 2665. Those rules operate retroactively on collateral review because they prevent a defendant from

Page 8

"fac[ing] a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523; *see also In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003) (holding that "there is no question that the new constitutional rule . . . articulated in *Atkins* is retroactively applicable to cases on collateral review"). The new rule announced in *Johnson* neither prohibits Congress from punishing a criminal who has a prior conviction for attempted burglary nor prohibits Congress from increasing that criminal's sentence because of his prior conviction.

We acknowledge that one of our sister circuits has held that *Johnson* applies retroactively to decisions on collateral review,

but we are unpersuaded by that decision. *See Price v. United States*, No. 15-2427 (7th Cir. Aug. 4, 2015). In *Price*, the Seventh Circuit explained that "[t]here is no escaping the logical conclusion that the [Supreme] Court itself has made *Johnson* categorically retroactive to cases on collateral review" because "[a] defendant who was sentenced under the residual clause necessarily bears a significant risk of facing a punishment that the law cannot impose upon him." *Id.* at *7. We disagree. We can "escap[e] th[at] logical conclusion" because Congress *could* impose the punishment in *Johnson* if Congress did so with specific, not vague, language.

Our dissenting colleague assumes that the new rule announced in *Johnson* also applies to the residual clause of the career offender enhancement in the Sentencing Guidelines, U.S.S.G. § 4B1.2(a)(2), but that assumption makes clear

Page 9

that precedents of the Supreme Court do not "necessarily dictate," *In re Anderson*, 396 F.3d at 1339 (internal quotation marks and citation omitted), that Rivero may file his second or successive motion to vacate, set aside, or correct his sentence. *See* Dissenting Op. at 15 n.2. The Supreme Court has never held that the Sentencing Guidelines are subject to a vagueness challenge. And four of our sister circuits have held that the Sentencing Guidelines—whether mandatory or advisory— cannot be unconstitutionally vague because they "do not establish the illegality of any conduct" and are "designed to assist and limit the discretion of the sentencing judge." *United States v. Tichenor*, 683 F.3d 358, 363-66, 365 n.3 (7th Cir. 2012); *see also United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996); *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990); *United States v. Wivell*, 893 F.2d 156, 159-160 (8th Cir. 1990). But the absence of Supreme Court precedent provides an alternative ground for why we must deny Rivero's application for leave to file a second or successive motion.

Our dissenting colleague also misunderstands the precedents of the Supreme Court on which she relies. In *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, the Supreme Court explained that new substantive rules "generally apply retroactively" on collateral review, and it listed as examples of new substantive rules "decisions that narrow the scope of a criminal statute by interpreting its terms" and "constitutional determinations that place particular conduct or persons

Page 10

covered by the statute beyond the State's power to punish," *id.* at 351-52, 124 S. Ct. at 2522. As an example of a "decision that narrow[s] the scope of a criminal statute by interpreting its terms," the Supreme Court cited *Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604 (1998), in which the Supreme Court explained that a new substantive rule that narrowed the definition of the word "use" applied retroactively on collateral review, *Schriro*, 542 U.S. at 351, 124 S. Ct. at 2522; *see also Bousley*, 523 U.S. 614, 118 S. Ct. 1604 (discussing the new substantive rule announced in *Bailey v. United States*, 516 U.S. 137, 139, 116 S. Ct. 501, 503 (1995)). But that new rule was the product of statutory interpretation, *see Bailey*, 516 U.S. at 139, 116 S. Ct. at 503 (interpreting 18 U.S.C. § 924(c)(1)), and it was not a new rule of constitutional law. The discussion in *Schriro* acknowledged that the type of new substantive rule at issue in *Bousley* is not a constitutional rule. *See* 542 U.S. at 351-52, 124 S. Ct. at 2522 (drawing a distinction between new rules that "narrow the scope of a criminal statute by *interpreting its terms*" and "*constitutional* determinations that place particular conduct or persons covered by the statute beyond the State's power to punish") (emphasis added). If Rivero— like the petitioner in *Bousley*—were seeking a first collateral review of his sentence, the new substantive rule from *Johnson* would apply retroactively. But Rivero has applied for leave to file a second or successive motion to vacate, set aside, or correct a federal sentence, and we may permit that leave only if his second or

Page 11

successive motion involves "a new rule of a new rule of *constitutional law*, made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2255(h)(2) (emphasis added). *Bousley* did not involve a new rule of constitutional law, so its holding cannot "necessarily dictate," *In re Anderson*, 396 F.3d at 1339 (internal quotation marks and citation omitted), that we apply the new rule from *Johnson* retroactively on collateral review.

Our dissenting colleague asserts that the government "d[id] not contest *Johnson*'s retroactivity," Dissenting Op. at 14, in another appeal, *Price v. United States*, No. 15-2427 (7th Cir. Aug. 4, 2015), but the government used tentative language to explain its position.. *See* Dissenting Op. at 14 n.1, 26-27. In *Price*, the government explained in its brief that the applicant made a "plausible argument that *Johnson* is a new . . . rule of constitutional law that the Supreme Court has, through a combination of holdings, made . . . retroactive to cases on collateral review," Response to Application, *Price v. United States*, No. 15-2427, at 19 (July 14, 2015) (internal quotation marks and citation omitted). Although the government did not contest that the new rule announced in *Johnson* applies retroactively on collateral review, the government did not concede that the applicant was entitled to relief. *See id.* at 20 (asserting that the applicant's "claim [has] possible merit") (internal quotation marks omitted). Moreover, the argument that the government asserted might "plausibl[y]," *id.* at 19, make the new rule from

Page 12

*Johnson* apply retroactively on collateral review is not the argument upon which the Seventh Circuit relied in its decision in *Price*, No. 15-2427. The government, like our dissenting colleague, relied upon *Bousley*, but the Seventh Circuit held that the new rule in *Johnson* "prohibited a certain category of punishment for a class of defendants because of their status," *Price*, No. 15-2427, at *7. That is, even the

Seventh Circuit did not hold that *Bousley* "necessarily dictate[s]," *In re Anderson*, 396 F.3d at 1339 (internal quotation marks and citation omitted), that the new rule announced in *Johnson* applies retroactively on collateral review.

Our dissenting colleague also asserts that, "[w]hen a person serving a term in prison was sent there pursuant to an unconstitutional provision [of a statute], future Congresses are not in a position to fix it[, b]ut we are." Dissenting Op. at 32-33. Our dissenting colleague has the law backwards. Congress enacted section 2255(h)(2) to prohibit us from granting leave to file a second or successive motion to vacate, set aside, or correct a federal sentence unless "the Supreme Court has made "a new rule of constitutional law . . . retroactive to cases on collateral review," 28 U.S.C. § 2255(h)(2), and only Congress can amend that statute. Congress is "in a position to fix it," Dissenting Op. at 32, by permitting prisoners like Rivero to benefit from the new rule announced in *Johnson*. But unless Congress amends section 2255(h)(2), we cannot permit Rivero to file his second or successive motion.

Page 13

Rivero's application for leave to file a second or successive motion to vacate, set aside, or correct his sentence is **DENIED**.

Page 14

JILL PRYOR, J., dissenting:

I dissent because I believe that in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court announced a new substantive rule of constitutional law that the Court has made retroactive to cases on collateral review. In no uncertain terms, the Supreme Court has said that "decisions that narrow the scope of a criminal statute by interpreting its terms . . . . apply retroactively . . . ." *Schriro v. Summerlin*, 542 U.S. 348, 351-51. The majority concedes that *Johnson* is that very type of narrowing

decision. So does the government, which does not contest *Johnson*'s retroactivity.[1]

I do not disagree with the foundation upon which the majority opinion builds its analysis. To be permitted to file a second or successive motion to vacate, set aside, or correct his sentence, Gilberto Rivero must make a prima facie showing that his application to file the motion relies upon "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). In concluding that the residual clause of the Armed Career Criminal Act ("ACCA") was impermissibly vague under the Due Process Clause, *Johnson* announced a new rule of constitutional

Page 15

law.[2] Maj. Op. at 4; *see Johnson*, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process."); *see also Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) ("[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (internal quotation marks omitted)). And there is no doubt that the rule announced in *Johnson* previously was unavailable to Mr. Rivero: he was convicted and sentenced in 2004, and we affirmed his sentence on direct appeal in 2005. *See United States v. Rivero*, 141 F. App'x 800 (2005) (unpublished).

The question, then, is whether *Johnson's* new rule of constitutional law applies retroactively to cases like Mr. Rivero's on collateral review. For second or successive petitions, a new rule is retroactive only if the Supreme Court itself has made it so. *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (citing 28 U.S.C.

Page 16

§ 2244(b)(2)(A)). "'[M]ade' means 'held' and, thus, the requirement is satisfied only if [the Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review." *Id.* As Justice O'Connor explained in her concurring opinion in *Tyler*, a new rule of constitutional law can be made retroactive "not only through an express pronouncement of retroactivity, but also 'through multiple holdings that logically dictate the retroactivity of the new rule.'" *In re Holladay*, 331 F.3d 1169, 1172 (11th Cir. 2003) (quoting *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring)). Because the Court in *Johnson* (a direct review case) did not expressly pronounce the new rule to be retroactive on collateral review, I agree with the majority that the new rule is retroactive only if holdings of the Supreme Court logically dictate its retroactivity. *See* Maj. Op. at 5.

The Supreme Court has, on two occasions important to this case, examined retroactivity of new rules of law. In *Teague v. Lane*, the Court decided that "new constitutional rules of criminal procedure will not be applicable" to cases on collateral review. 489 U.S. 288, 310 (1989) (plurality opinion). But the Court established exceptions to this general principle of non-retroactivity, including, as relevant here, new rules that "place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.*

Page 17

at 307.[3] As the majority points out, under the *Teague* exception, rules that prohibit the criminalization of certain primary conduct, as well as rules that prohibit a category of punishment for certain persons or conduct — rules that are essentially substantive in nature — are retroactive. *See* Maj. Op. at 7.

Nine years later in *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court refused an invitation to apply *Teague's* general rule of non-retroactivity. Kenneth Bousley was convicted in 1990 of "using" a firearm in violation of 18 U.S.C. § 924(c)(1). *Id.* at 616.

After the Eighth Circuit Court of Appeals affirmed his conviction, Mr. Bousley sought collateral relief. *Id.* at 617. While Mr. Bousley's appeal from the district court's denial of habeas relief was pending, the Supreme Court held in *Bailey v. United States* that § 924(c)(1)'s "use" prong required the government to establish "active employment of the firearm." 516 U.S. 137, 144 (1995). Because Mr. Bousley asserted that he merely possessed the firearm, he argued based on *Bailey* that his conduct was not a crime under § 924(c)(1) and that his guilty plea to that charge was therefore involuntary. *Bousley*, 523 U.S. at 617-18. The Eighth Circuit concluded that Mr. Bousley was not entitled to collaterally attack his guilty plea based on *Bailey*, and, when the government declined to argue in support of the Eighth Circuit's decision, the

Page 18

Supreme Court appointed amicus. *Id.* at 617-18.

Amicus urged the Supreme Court to apply a *Teague* bar to Mr. Bousley's claim, but the Supreme Court declined to do so because "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct 'beyond the power of the criminal law-making authority to proscribe,' [*Teague*, 489 U.S. at 311,] necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Id.* at 619-21 (other internal quotation marks omitted). "Accordingly, it would be *inconsistent with the doctrinal underpinnings* of habeas review to preclude petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid." *Id.* at 621 (emphasis added). Put differently, *Bailey* necessarily was available to Mr. Bousley on collateral review. *Id.*; *see United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002) ("Decisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect." (citing *Bousley*, 523 U.S. at 620-21)).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court provided a blueprint for the application of the types of retroactively applicable rules the Court constructed in *Teague* and *Bousley*. There, the Court clearly stated that new *substantive* rules of constitutional law apply retroactively, explaining:

> This includes decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States*, 523 U.S. 614, 620-

Page 19

> 21 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *see . . . Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal" or faces a punishment that the law cannot impose upon him. *Bousley*, *supra*, at 620.

*Id.* at 351-52 (internal quotation marks and footnotes omitted). *Summerlin* makes plain that the rules announced in *Bousley* and in *Teague* are related but distinct, and that either type of rule is retroactively applicable.

The majority and I agree that "'[t]he new rule announced in [*Johnson*] is substantive rather than procedural because it narrow[ed] the scope of [section] 924(e) by interpreting its terms, specifically, the term violent felony.'" Maj. Op. at 4 (quoting *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1278 (11th Cir. 2013) (citing *Summerlin*, 542 U.S. at 351-52)). "That is, *Johnson* 'narrowed the class of people who are eligible for' an increased sentence under the Armed Career Criminal Act."

*Id.* at 4-5 (quoting *Bryant*, 738 F.3d at 1278 (emphasis omitted)). That is, the majority agrees that the rule announced in *Johnson* fits squarely into the *Bousley* category of retroactive rules described by *Summerlin*. Our inquiry should end there. Rules that "narrow the scope of a criminal statute by interpreting its terms," which are substantive in nature, apply retroactively, and *Johnson* announced such a rule. *Summerlin*, 542 U.S. at 351-52. Thus, the rule

Page 20

announced in *Johnson* necessarily applies retroactively, and Mr. Rivero's application should be granted.[4]

Yet, despite its express acknowledgement that *Johnson* is precisely the type of decision that the Supreme Court has said "generally appl[ies] retroactively," *Summerlin*, 542 U.S. at 351, the majority nevertheless concludes that the Supreme Court has not made *Johnson* retroactive. I cannot agree.

The majority says that the retroactive application of new substantive constitutional rules on collateral review is "limit[ed] . . . to those rules that 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.'" Maj. Op. at 3 (quoting *Summerlin*, 542 U.S. at 352 (internal quotation marks and citation omitted)). But *Summerlin* did not describe a limitation; instead, it explained that decisions that narrow the scope of a criminal statute by interpreting its terms apply retroactively "*because* they *necessarily* carry" such a risk. 542 U.S. at 352 (emphasis added) (internal quotation marks omitted). In other words, the Court in *Summerlin* imposed no additional requirement for retroactivity with this language — it simply illustrated the reason why certain rules, including rules narrowing a criminal law's scope, must be retroactively

Page 21

applicable. *See Peter*, 310 F.3d at 711.

Why does this distinction matter? Because the majority employs a description it incorrectly characterizes as a "limit[ation]" to eliminate one of the two categories of rules the Supreme Court described with that language. *See* Maj. Op. at 3 (citing *Teague*, 489 U.S. at 311, for the proposition that "a new substantive rule applies retroactively if it 'places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'"). By eliminating that category, the majority altogether sidesteps *Bousley* (which according to *Summerlin* described a necessarily retroactive type of rule related to but distinct from Teague's exception).[5] In concluding that "[n]o combination of holdings of the Supreme Court 'necessarily dictate[s]' that *Johnson* should be applied retroactively on collateral review," Maj. Op. at 5 (quoting *In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005)), the majority writes:

> [T]he rule announced in *Johnson* does not meet the criteria the Supreme Court uses to determine whether the retroactivity exception for new substantive rules applies. *Johnson* held that the residual clause of the Armed Career Criminal Act *does not* impose a

Page 22

> punishment for a prior conviction for possession of a short-barreled shotgun because that clause is unconstitutionally vague, 135 S. Ct. at 2558, but *Johnson* did not hold that Congress *could not* impose a punishment for that same prior conviction in a statute with less vague language. Indeed, the day after the Supreme Court decided *Johnson*, Congress could have amended the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), to provide a greater sentence for a

defendant with a prior conviction for possession of a short-barreled shotgun or, as here, a prior conviction for attempted burglary. Nothing in *Johnson* suggests that "certain kinds of primary, private individual conduct [are] beyond the power of [Congress] to proscribe," *Teague*, 489 U.S. at 311, 109 S. Ct. at 1075 (plurality opinion) (internal quotation marks and citation omitted).

Maj. Op. at 6.

Here the majority again focuses only on *Teague*'s retroactivity exception, overlooking *Summerlin*'s instruction that two different types of substantive decisions apply retroactively: "[1] *decisions* that narrow the scope of a criminal statute [as in *Bousley*], *as well as* [2] constitutional *determinations* that place particular conduct or persons covered by the statute beyond the State's power to punish [as in Teague]." *Summerlin*, 542 U.S. at 351-52 (emphasis added).[6] A rule narrowing the scope of a criminal statute by interpreting its terms is one type.

Page 23

*Summerlin*, 542 U.S. at 351-52 (citing *Bousley*). The *Teague* exception, a rule that places conduct or persons covered by a statute beyond the State's power to punish, is a second type. *Id.* (citing *Teague*).

I do not doubt that new substantive rules may sometimes both narrow the scope of a criminal statute and place certain conduct outside the State's authority to punish. I think the rule announced in *Johnson* is such a case, although the majority disagrees. But *Summerlin* could not be clearer that a rule is retroactive if it falls into one of the two related categories the Supreme Court described. So requiring a new rule to check the boxes of both types of substantive, retroactive decisions — when the

two types are listed disjunctively — is directly contrary to *Summerlin*.

The result I would reach in this case fits neatly within Justice O'Connor's example in *Tyler*. "[I]f we hold in Case One that a particular *type* of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of a particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review." *Tyler*, 533 U.S. at 668-69 (O'Connor, J., concurring) (emphasis added). "In such circumstances, we can be said to have 'made' the given rule retroactive to cases on collateral review." *Id.* at 669. In Case One, *Bousley*, the Supreme Court held that rules made in "situations in which this Court decides the meaning of a criminal statute enacted by Congress" by "holding that a substantive federal criminal statute does not reach certain conduct"

Page 24

raise no *Teague* retroactivity bar. *Bousley*, 523 U.S. at 620. The Supreme Court reiterated that holding in *Summerlin*, describing the type of *Bousley* decisions that "apply retroactively" to include "decisions that narrow the scope of a criminal statute by interpreting its terms . . . because [those decisions] 'necessarily carry a significant risk that a defendant' . . . faces a punishment that the law cannot impose upon him." *Summerlin*, 542 U.S. at 351-52 (quoting *Bousley*, 523 U.S. at 620).

Case Two, of course, is *Johnson*, in which the Supreme Court held that "[i]ncreasing a defendant's sentence under the [residual] clause [of the ACCA] denies due process of law." 135 S. Ct. at 2557. In so holding, the Supreme Court "narrow[ed] the scope of a criminal statute by interpreting its terms." *Summerlin*, 542 U.S. at 351 (citing *Bousley*, 523 U.S. at 620-21); *see* Maj. Op. at 4. Because the action the Supreme Court took in *Johnson* is "coextensive with" *Bousley*'s category of substantive, retroactive rules, the two cases, taken together, "logically dictate" the conclusion that *Johnson* is retroactive. *Tyler*, 533 U.S. at 666-67.

10 of 16

Moreover, *Johnson*'s void-for-vagueness decision is precisely the kind of rule that "'necessarily carr[ies] a significant risk that a defendant' . . . faces a punishment that the law cannot impose upon him." *Summerlin*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620). *Johnson* found the ACCA's residual clause to be unconstitutionally vague because if a prior offense potentially falls within the residual clause (as a crime that "otherwise involves conduct that presents a serious

Page 25

potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)), then courts must "picture the kind of conduct that the crime involves in the ordinary case" and then "judge whether that abstraction presents a serious potential risk of physical injury." 135 S. Ct. at 2556-57 (internal quotation marks omitted). By judging the crime not by what the defendant *did* but by what the crime ordinarily entails, and then judging whether that hypothetical conduct presents a serious potential risk of injury to another, there is a "significant risk" that what the defendant actually *did* is not what the residual clause purported to punish — that is, that the defendant "faces a punishment that the law cannot impose upon him." *Summerlin*, 542 U.S. at 352 (citing *Bousley*).[2]

Page 26

This illustrates not only that *Bousley* and *Johnson*, taken together, "logically dictate the retroactivity of the new rule,'" *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring), but also that *Johnson* "prohibits a category of punishment for certain offenders or offenses," as the majority describes *Teague*. Maj. Op. at 7. As I said, *Bousley* and *Teague* involve related concepts, and in this case the rule announced in *Johnson* also prohibits courts from imposing a 15-year mandatory minimum sentence under the ACCA's residual clause for non-enumerated offenses. Thus, I also believe that *Teague* and *Johnson*, taken together, necessarily dictate the *Johnson* rule's retroactivity. And I am not alone in this conclusion. Based on *Teague* as described

in *Summerlin*, the Seventh Circuit concluded that the Supreme Court has made *Johnson* retroactively applicable to second or successive petitions. *See Price v. United States*, No. 15-2427, 2015 WL 4621024, at *3 (7th Cir. Aug. 4, 2015) (concluding, borrowing from the language of *Teague*, that in declaring the ACCA's residual clause unconstitutionally vague, "the Supreme Court prohibited a certain category of punishment for a class of defendants because of their status" (internal quotation marks omitted)). Indeed, before the Seventh Circuit decided *Price*, it asked the United States to opine whether a successive collateral attack

Page 27

based on *Johnson* should be permitted, and the government conceded that it should. *Id.* at *1; *see* United States Response to Application, *Price v. United States*, No. 15-2427, at 11-12 (July 14, 2015) ("Response to Application").[8]

The majority opinion says *Johnson* nonetheless does not apply retroactively because Congress *could* amend the ACCA and reimpose heightened punishments for the very crimes of which Mr. Rivero was convicted. Reliance upon what Congress *could do* to salvage what the Supreme Court has declared unconstitutional is without legal foundation and, what's more, overlooks Congress's actions before, during, and after *Bousley* was decided.

*Bousley*, which permitted a petitioner to collaterally attack his guilty plea based on the Supreme Court's decision limiting the scope of § 924(c)(1) to "active employment of the firearm," was decided in May 1998. 523 U.S. at 616 (citing *Bailey*, 516 U.S. at 144). In November 1998, Congress amended § 924(c)(1) to criminalize "possess[ion of] a firearm" "in furtherance of" a crime of violence or

Page 28

drug trafficking crime, which encompassed the conduct for which Mr. Bousley originally was convicted. 112 Stat. 3469 (1998).

The possibility of this subsequent amendment had no bearing whatsoever on the Supreme Court's decision about Mr. Bousley's reliance on *Bailey* on collateral review. And why would it? *Bailey* narrowed the scope of the statute under which Mr. Bousley was convicted. That satisfied the Supreme Court that the rule must apply retroactively. *Bousley*, 523 U.S. at 621 ("Accordingly, it would be *inconsistent with the doctrinal underpinnings* of habeas review to preclude the petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid."); *see also Summerlin*, 542 U.S. at 351-52. The Supreme Court was unconcerned with the hypothetical prospect that Congress could amend § 924(c)(1) to criminalize Mr. Bousley's conduct.[2] Of course it was possible. Not only was it possible, but a bill known as the "Bailey Fix Act" was already under debate in Congress when the Supreme Court decided *Bousley*. *See* 143 Cong. Rec. S633-06 (Jan. 22, 1997) (introduction of Senate bill 191 by Senator Helms); H. Rep. 105-845 at 86-87 (noting that the Senate passed S. bill 191 on November 6, 1997, and that the House of Representatives passed its

Page 29

companion bill, H.R. 424, on February 24, 1998, both before oral argument in *Bousley*); 144 Cong. Rec. S12670-02 (Oct. 16, 1998) (Senator DeWine "hail[ing] the passage last night of the Bailey Fix Act, also known as the use or carry bill, after two Congresses"). Nonetheless, the Supreme Court permitted Mr. Bousley to proceed on collateral review under its decision in *Bailey* without ever mentioning Congress's efforts or ability to amend the statute. Why? Because that fact was immaterial to the Court's decision. It is immaterial here, too.

I do not dispute that Congress could pass a constitutional residual clause for the ACCA.[10] But Mr. Rivero wasn't sentenced under such a regime. Nor was Mr. Johnson. The regime under which both were sentenced was unconstitutional. The question is not whether an alternative regime could be constitutional, but whether both

men's actual sentences, the ones they are actually serving, are unconstitutional. The majority neither cites any authority nor provides any logical explanation why a future Congress's hypothetical actions could affect retroactivity

Page 30

today. That's because there is none. And the existence of *Bousley* despite § 924(c)(1)'s ultimate amendment tells us there cannot be.

The majority alternatively contends that the absence of Supreme Court precedent on the viability of void-for-vagueness challenges to the Sentencing Guidelines means that we must deny Mr. Rivero's application, citing in support the decisions of four circuits concluding that the guidelines are not subject to such challenges. *See* Maj. Op. at 9. But there is a circuit split on the issue. *See United States v. Reardon*, 349 F.3d 608, 614 (9th Cir. 2003) ("We allow challenges to the sentencing guidelines on vagueness grounds."); *see also United States v. Jones*, 979 F.2d 317, 318-20 (3d Cir. 1992) (examining and rejecting the argument that the Sentencing Guidelines' failure to distinguish between cocaine and cocaine base "is arbitrary and irrational" and thus void for vagueness).[11] Indeed, our Court has addressed on the merits such a void-for-vagueness challenge. *See United States v. Sanders*, 536 F. App'x 879, 882 (11th Cir. 2013) (unpublished) (concluding that the career offender enhancement's residual clause necessarily was not unconstitutionally vague because this Court previously had held that the ACCA's

Page 31

residual clause was not void for vagueness (citing *United States v. Gandy*, 710 F.3d 1234 (11th Cir. 2013)); *see also United States v. Rutherford*, 175 F.3d 899, 906 (11th Cir. 1999) (rejecting on the merits a void-for-vagueness challenge to the guidelines definition of "crack" cocaine).

Further, the four circuit decisions the majority cites were decided before *United States*

*v. Booker*, 543 U.S. 220 (2005), or rely on pre-*Booker* authority. They therefore fail to consider that the mandatory guidelines regime unconstitutionally forced judges to interpret what were, in effect, an entirely new set of criminal laws. *See id.* at 234 ("Because they are binding on judges, we have consistently held that the Guidelines have the force and effect of laws."). To the extent that overly vague criminal statutes always create the risk of arbitrary enforcement, *see Johnson*, 135 S. Ct. at 2557, overly vague Sentencing Guidelines necessarily offended due process before *Booker* made the guidelines advisory. *See also id.* at 237 ("[T]he fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lacks constitutional significance."). Mr. Rivero's career offender residual clause sentence was imposed before *Booker*. Thus, because he was sentenced as a career offender under the pre-*Booker* mandatory guidelines regime, application of the impermissibly vague residual clause to him axiomatically offended due process.

Page 32

In any event, I do not agree that a Supreme Court ruling on a void-for-vagueness challenge to the guidelines is required for purposes of the *Tyler* analysis. As I explained above, the majority and I simply disagree on the proper application of the *Tyler* test. So, the absence of such a ruling is, in my mind, immaterial.

Finally, I note that the majority's alternative position on the cognizability of a vagueness challenge to the career offender guideline has no effect on the applicability of *Johnson* to collateral challenges by persons sentenced under the ACCA's residual clause. Accordingly, we should not decide the retroactivity of the rule announced in *Johnson* for those persons to the extent the majority denies Mr. Rivero's application on its alternative ground.

I believe Mr. Rivero has made a prima facie showing that his application satisfies § 2255(h) and § 2244(b)(2)(A). We are under too tight a deadline to decide more than that at this stage.

Let us not forget that Mr. Rivero and other persons sentenced under the residual clause and its sister clause in the Sentencing Guidelines are serving lengthy sentences. "Invoking so shapeless a provision to condemn someone to prison for 15 years to life [under the ACCA] does not comport with the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2560. When a person serving a term in prison was sent there pursuant to an unconstitutional provision, future Congresses are not in a position to fix it. But we

Page 33

are, and the Supreme Court, through multiple holdings, has told us that we should. I respectfully dissent.

--------

Footnotes:

[1] Although the United States has not been asked to weigh in here, in another case raising the identical issue, when asked by the Seventh Circuit to respond to the application to file a second or successive motion, the government stated, "the United States submits that the application should be granted." United States Response to Application, *Price v. United States*, No. 15-2427, at 1 (July 14, 2015); *see id.* at 7 ("[F]or this Court to grant Price's application, it must find that *Johnson* is a (1) previously unavailable (2) new rule (3) of constitutional law that (4) has been made retroactive by the Supreme Court to cases on collateral review.").

[2] I assume that the new rule of constitutional law announced in *Johnson* applies to the residual clause of the career offender enhancement, section 4B1.2(a)(2) of the Sentencing Guidelines. *See United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994) ("Precisely the same analytical framework applied by the courts in ascertaining the scope of a 'crime of violence' [under the career offender guideline] logically obtains with respect to the question of what kind of conduct comprises a 'violent felony' [under the ACCA]."); *see also* U.S. Sentencing Comm'n, *News Release: U.S. Sentencing Commission Seeks Comment on Revisions to Definition of Crime of Violence*, at 1 (Aug. 7, 2015) ("[T]he statutory language the [Supreme] Court found unconstitutionally vague [in *Johnson*], often referred

to as the 'residual clause,' is identical to language contained in the 'career offender' sentencing guideline . . . ."). This assumption is bolstered by the United States Sentencing Commission's proposed changes to the career offender guideline "eliminat[ing] from the guideline definition of 'crime of violence' the residual clause." *Id.* For a discussion of this issue as it relates to the majority's alternative position, *see infra* at 17-19.

[3.] *Teague* also provided an exception to non-retroactivity for rules involving "procedures . . . implicit in the concept of ordered liberty," the so-called "watershed rules of criminal procedure" exception. *Teague*, 489 U.S. at 307, 311. We need not concern ourselves with this exception because neither *Johnson* nor the case before us presents any such rule.

[4.] I should be clear that granting the application would mean only that Mr. Rivero has made a prima facie showing of a claim involving *Johnson*. Under § 2244, the district court must determine whether Mr. Rivero is entitled to relief.

[5.] I recognize that *Bousley* was a first-§ 2255 case, but that alone does not answer the question of retroactivity here. *Bousley*'s holding, not its procedural posture, does. Namely, *Bousley*'s holding, combined with *Johnson*'s, "logically dictates" that the unconstitutionality of the ACCA's residual clause is retroactive in effect. *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring); *see Holladay*, 331 F.3d at 1172 (applying Justice O'Connor's test). It would be illogical to require one of the Supreme Court's holdings logically dictating the retroactivity of a rule to be a § 2244 case because the statute itself dictates that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(e).

[6.] The phrase "as well as" means "and," but here it serves only to list types of substantive rules disjunctively, each an independently sufficient condition for recognizing retroactive effect. *Cf. Pasquini v. U.S. Immigration & Naturalization Serv.*, 557 F.2d 536, 538 (5th Cir. 1977) (reasoning that the "wording of [a criminal statute] . . . [was] so broad as to require the conclusion that violations of foreign *as well as* domestic marijuana laws [fell] within its ambit," without concluding that concurrent violations of domestic and foreign laws were required to trigger the statutory provision at issue (emphasis added)). To

read *Summerlin* as the majority does would require "as well as" to modify the verbs in each phrase, but it does not. That is, *Summerlin* does not say that only "decisions that narrow the scope of a statute . . . as well as . . . place particular conduct . . . beyond the State's power to punish" are retroactive. 542 U.S. at 351-52.

[7.] The majority contends that, because *Bousley* did not involve a new rule of constitutional law, "its holding cannot 'necessarily dictate' . . . that we apply the new rule from *Johnson* retroactively on collateral review." Maj. Op. at 10. In the majority's view, both Case One and Case Two must involve new rules of constitutional law. I do not read *Tyler* to require both holdings to be constitutional in nature. *Tyler* sets forth "three prerequisites" to obtaining relief in the context of a second or successive motion. 533 U.S. at 662. "First, the rule on which the claim relies must be a 'new rule' of constitutional law; second, the rule must have been 'made retroactive to cases on collateral review by the Supreme Court'; and third, the claim must have been 'previously unavailable.'" *Id.*

This test from *Tyler* tells us that whether the rule has been made retroactive is a wholly distinct element from whether the claim relies on a new rule of constitutional law. This much is evident from the fact that in *Tyler* only the second element was at issue. *Id.* More importantly, the first element is composed of two parts: "a '*new rule*' of *constitutional law*." *Id.* (emphasis added). The retroactivity element is concerned only with the "rule" aspect of the first element, not with its constitutional nature. Consistent with this reading, Justice O'Connor says in her concurrence that multiple holdings may logically dictate a result when the Supreme Court "hold[s] in Case One that *a particular type of rule* applies retroactively to cases on collateral review and hold[s] in Case Two that *a given rule* is of that particular type." *Id.* at 668-69 (O'Connor, J., concurring) (emphasis added). She does not say that Case One must hold that "a particular type of constitutional rule" applies retroactively. That would conflate the elements of a successive motion that the *Tyler* majority made clear were distinct.

For this reason, I do not think *Tyler* requires that both cases be constitutional to logically dictate retroactivity. It is enough that *Bousley* deemed "a particular type of rule," rules narrowing the scope of criminal statutes, to "appl[y] retroactively to cases on collateral review" and that *Johnson* announced a new

rule of constitutional law by narrowing the scope of the ACCA's residual clause. *Tyler*, 533 U.S. at 668.

[5] The majority suggests that in *Price* the Seventh Circuit disagreed with the government's interpretation and with mine. To the extent there is any discrepancy, it is only a matter of emphasis. The majority is correct that the government relied largely on *Bousley* in concluding that *Johnson* likely applied retroactively to second or successive motions. *But see* Response to Application at 14 ("[R]ules that go beyond regulating only the 'manner' of determining culpability—and instead categorically change the range of outcomes—should be treated as substantive rules." (citing *Teague*)). The Seventh Circuit said, "We now conclude, consistently with the government's position, that *Johnson* announces a new substantive rule of constitutional law that the Supreme Court has categorically made retroactive to final convictions." *Price*, 2015 WL 4621024, at *1. The Seventh Circuit relied upon the same language from *Summerlin*, quoting *Bousley*, that I do. *Id.* at *2. The Court also observed that its conclusion was consistent with *Teague. Id.*

[6] Should Congress amend the ACCA's residual clause to comport with the Constitution and provide a greater prison sentence for a defendant with a prior conviction for possession of a short-barreled shotgun, as in *Johnson*, or, as here, a prior conviction for attempted burglary, those sentenced under the amended statute could not seek collateral review based on *Johnson*. Just as in *Bousley*, however, the prospect of amendment has no effect upon cases that come before us in the meantime.

[7] I note, however, that doing so would be quite an endeavor. The Court in *Johnson* acknowledged that statutes using terms like "substantial risk" and "unreasonable risk" are not by their very natures

unconstitutional, but such laws pass muster in part because they are not linked "to a confusing list of examples" as was the ACCA's residual clause. *Johnson*, 135 S. Ct. at 2561. "More importantly," the Court criticized the combination of the categorical approach, the use of which the Court reaffirmed, and the phrase "serious potential risk" as used in the residual clause. *Id.* This "abstract inquiry," the Court said, "offers significantly less predictability" than one tied to actual conduct rather than to the abstract conditions the categorical approach requires. *Id.* The Supreme Court's blueprint creates a daunting task for Congress. Would Congress keep the residual clause language but scrap some of the "confusing list of examples?" *Id.* Would it scrap the residual clause and swap it for a laundry list of enumerated offenses? Or would it write into the law a requirement that the defendant's actual conduct is what matters, forcing courts to abandon the categorical approach? And would such a law even then pass constitutional muster?

[8] I do not quibble with the majority's citation to the Sixth Circuit's decision that the guidelines are not subject to void-for-vagueness challenges, but I think it is worth noting that the Sixth Circuit recently has applied *Johnson*'s vagueness rule to the career offender guideline in at least two unpublished opinions in direct review cases. *See, e.g.. United States v. Darden*, 605 F. App'x 545, 546 (6th Cir. 2015) ("Darden deserves the same relief as Johnson: the vacating of his sentence. Indeed, after *Johnson*, the Supreme Court vacated the sentences of offenders who were sentenced under the Guidelines' residual clause." (citing cases the Supreme Court vacated in light of *Johnson*)); *United States v. Harbin*, No. 14-3956, 2015 WL 4393889, at *1 (6th Cir. July 20, 2015).

--------

CERTIFIED MAIL

Inmate Name: Daniel R Angel

Register Number: 48128-004

United States Penitentiary

P.O. Box 1000

Lewisburg, PA 17837

KS 9/9/15

7015 0640 0003 3451 5044

United States District Cou

Southern District of Florida

Office Of Clerk - Room 8N(

400 North Miami Avenue

Miami, Florida 33128-7716

Legal Mail

Re: 1:15-CV-22901-JEM